

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 1, 2023

**BY ECF**
Honorable Andrew L. Carter Jr.
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *United States* **v.** *Darnell Feagins*, No. 20 Cr. 218 (ALC)

Dear Judge Carter:

The defendant in the above-captioned case is scheduled to be sentenced on June 15, 2023, at 3:00 p.m.  The Government respectfully submits this letter in connection with sentencing.  The parties stipulated that the applicable United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines") range is 130 to 162 months' imprisonment (the "Stipulated Guidelines Range").  For the reasons set forth below, the Government submits that a sentence within Stipulated Guidelines Range is appropriate in this case.

I.   **Offense Conduct and Procedural History**

In September 2011, when the defendant was twenty-four years old, he sexually abused a twelve-year-old girl.[1] (*See* PSR ¶ 57). On January 4, 2012, the defendant pled guilty in New York Supreme Court, Kings County, to endangering the welfare of a child, a misdemeanor, in violation of New York Penal Law Section 260.10(1), and criminal sexual act in the second degree, a felony, in violation of New York Penal Law Section 130.45. (PSR ¶¶ 8, 57). The defendant was sentenced to two years' imprisonment and five years of supervision. (*Id.*).

In July 2013, the defendant was paroled and registered as a sex offender with a residence in Brooklyn. (PSR ¶ 9). The defendant soon after absconded for supervision, and a parole violation arrest warrant was issued in October 2013. (*Id.*). Authorities ultimately learned the defendant was residing in Columbus, Georgia, and later found him in Opelika, Alabama, where he was arrested in August 2014 and then prosecuted in the Middle District of Georgia for failure to register as a sex offender. (PSR ¶¶ 10, 58). In May 2015, the defendant pled guilty to the charge and was sentenced to 27 months imprisonment, to run consecutively to any sentence imposed by the New York Supreme Court for the violation of parole, as well as five years of supervised release. (*Id.*).

---

[1] The Kings County criminal complaint, which was produced to the defense in discovery, identifies the victim's age.

In July 2016, the defendant completed his federal prison term and was transferred to the custody of the New York Department of Corrections to address his parole violation. (PSR ¶ 11). He was ultimately released from custody in November 2016. (*Id.*). The defendant continued his state term of supervision. (*Id.*). Initially, the defendant failed to report for federal supervised release, but federal probation ultimately learned form the New York Department of Corrections that the defendant was residing at a shelter in the Bronx, and the defendant began federal supervised release in this District in June 2017. (PSR ¶¶ 11, 58). The case was assigned to the Honorable Richard J. Sullivan, in No. 17 Cr. 377. (*Id.*).

On May 2, 2018, the defendant was arrested for violating his state parole, and he was detained. (PSR ¶ 12). The Probation Office also submitted a violation report to Judge Sullivan, alleging numerous violations arising from the same incident that led to his state parole violation, and the defendant was transferred to federal custody on July 12, 2018, for the violation of supervised release. (*Id.*). On August 28, 2018, the defendant admitted to four of the federal supervised release violations: (1) harassment in the second degree, a class A misdemeanor and grade C violation, in violation of N.Y.P.L. § 240.26; (2) unlawful surveillance in the second degree, a class E felony and grade B violation, in violation of N.Y.P.L. § 250.45(5); (3) dissemination of an unlawful surveillance image, a class A misdemeanor and grade C violation, in violation of N.Y.P.L. § 250.55; and (4) unlawful disclosure of an intimate image, a grade C violation, in violation of New York City Law 10-177. These violations arose out of an incident in 2018 in which the defendant filmed an adult victim, without her consent, performing oral sex on the defendant, and the defendant subsequently sent the video to the victim's friends and family over Facebook message with harassing messages. (PSR ¶ 58). Judge Sullivan sentenced the defendant to two years' imprisonment, the statutory maximum, and lifetime supervised release; the sentence was upheld on appeal.

While investigating the violation of supervised release of 2018, which included additional allegations of forced sexual acts involving the same victim, the Government obtained a search warrant for the defendant's cellphone (the "Galaxy S8 Cellphone") seized incident to his arrest in May 2018. (PSR ¶ 13). The Government found child pornography images on the phone. (*Id.*). The Government began an investigation regarding the child pornography with the FBI. A forensic review of the Galaxy S8 Cellphone showed that the defendant, using special software, had wiped most of the phone's content prior to his 2018 arrest, including the child pornography material. (PSR ¶ 15). FBI agents discovered approximately 1,243 files containing images of child pornography on the Galaxy S8 Cellphone. (PSR ¶ 14). Multiple images recovered from the phone depicted penetration, including sexual objects being inserted into a victim's vagina, as well as an adult male's penis being inserted into a victim's vagina and anus. (*Id.*) Several of the images depicted prepubescent children and at least some children in the images appear to be toddlers. (*Id.*) Forensic analysis further showed that the defendant stored and accessed the child pornography material using a "hidden calculator," a phone application designed to look like a calculator application to hide information within the phone. (PSR ¶ 16). This application unlocks access to hidden material once the user enters a code. (*Id.*). In addition, forensic analysis showed that the defendant downloaded at least some of the child pornography material from various websites and that at least some of the images were downloaded as early as November 2017. (*Id.*).

On March 19, 2020, while the defendant was completing his violation of supervised release sentence at a halfway house, a grand jury in this District returned an indictment charging the defendant with possessing child pornography on the Galaxy S8 Cellphone. (PSR ¶ 17). Because the COVID-19 pandemic had just started, the defendant was not arrested at that time, and the defendant completed his violation of supervised release prison term and began his new term of supervised release. (*Id.*). The indictment was not disclosed to the defendant, although it was not sealed. On June 30, 2020, after the Probation Office discovered that the defendant had an unauthorized smartphone,[2] the defendant absconded from federal supervised release. (PSR ¶ 18).[3]

On October 7, 2020, the U.S. Marshals located and arrested the defendant in the Bronx. (PSR ¶ 19).[4] In his recorded post arrest statement, the defendant admitted that he had downloaded images of child pornography in connection with the S8 Galaxy Cellphone. (*Id.*).

The Government obtained a search warrant for the defendant's cellphone seized incident to arrest on October 7, 2020 (the "Coolpad Cellphone"). (PSR ¶¶ 19, 20). The FBI found 41 videos and 41 images of child pornography on the Coolpad Cellphone, which primarily consisted of prepubescent females exposing their genitals and digitally penetrating themselves. (PSR ¶ 20).

II. **Procedural History Since the Defendant's Most Recent Arrest**

On October 7, 2020, the defendant was arrested, presented and arraigned, and detained. He has remained detained since that time. On December 8, 2022, after his fourth appointment of counsel, the defendant pled guilty pursuant to a plea agreement before Magistrate Judge Valerie Figueredo to a single-count superseding information (the "Superseding Information") charging the defendant with possession of child pornography, in violation of 2252A(a)(5)(B) and (b)(2). The Superseding Information expanded the time frame of the offense conduct from 2018 to October 2020 to cover the child pornography recovered from the defendant's cellphone at the time of his arrest on October 7, 2020. On December 9, 2022, Your Honor accepted the defendant's guilty plea.[5]

---

[2] The Government obtained a search warrant for this phone. No child pornography was found on the phone.

[3] The PSR mistakenly lists the date as 2022.

[4] The PSR mistakenly lists the date as 2022.

[5] The defendant described in his sentencing submission that he pled guilty pursuant to the plea agreement because the Government "threatened" to indict him for receipt of child pornography, which would carry a mandatory minimum sentence of fifteen years of imprisonment. (Def. Sub. at 10.). The Government did not threaten the defendant. After the defendant was indicted in March 2020, the FBI continued its investigation and forensic analysis of the Galaxy S8 Cellphone and developed evidence sufficient to charge receipt of child pornography. That information and analysis was produced to the defendant in discovery. When represented by first counsel, prior to the Government seeking a superseding indictment to add a receipt charge, the defendant made a mitigation submission to the Government. The submission was reviewed by the mitigation committee, and the committee's decision was to permit the defendant to plead guilty to possession of child pornography in lieu of receipt, but if the defendant proceeded to trial, the Government

Page 4

In the Plea Agreement, the parties agreed that the Guidelines range is 130 to 162 months' imprisonment, and that there is a 120 months' mandatory minimum term of imprisonment. On May 24, 2023, the Probation Office issued its revised final Presentence Report ("PSR"). The PSR calculates the Guidelines in the same manner to which the parties agreed in the Plea Agreement, and concludes that the Stipulated Guidelines Range of 130 to 162 months' imprisonment is the applicable Guidelines range, with a mandatory term of 120 months' imprisonment. (PSR ¶ 95.) The Probation Office recommends a sentence of 130 months' imprisonment, to run consecutively to any term of imprisonment imposed in connection with the pending violation in No. 17 Cr 377 (RJS). (PSR at 33). The Probation Office further recommends a life term of supervised release. (PSR at 33).

In addition to the case pending before Your Honor, the defendant has a pending violation of supervised release before the Honorable Richard J. Sullivan in No. 17 Cr 377. As described above, in or about late June 2020, the defendant absconded from the term of federal supervised release imposed in No. 17 Cr. 377. In July 2020, the Probation Office submitted a violation report to Judge Sullivan, which included seven violations relating to the defendant's abscondment from supervision and possession of an unauthorized smartphone discovered by the Probation Office prior to the defendant absconding: (1) failure to register an email address as a sex offender, in violation of New York Correction Law Article 6C 168F; (2) failure to register a change of address as a sex offender, after the defendant absconded from federal supervision, in violation of New York Correction Law Article 6C 168F; (3) failure to notify the Probation Office of a change in residence as of June 30, 2020; (4) the downloading and use of social media applications in violation of is special conditions; (5) circumvention of the monitoring program by failing to notify the Probation Office of a cellphone in his possession; (6) failure to report to the Probation Office as directed as of July 1, 2020; and (7) failure to participate in sex offender treatment after absconding. After the defendant pled guilty in December 2022 to possessing child pornography, which included the child pornography recovered from the defendant in October 2020 during current term of supervised release, the Probation Office amended the violation report to include an eighth violation for possessing child pornography. The defendant denied the specifications, including the eighth violation to which he already pled guilty in this case. Judge Sullivan held an evidentiary hearing on March 28, 2023, regarding the eight specifications, and the parties submitted additional post-hearing briefing. Judge Sullivan has yet to make his evidentiary findings regarding the eight violations. The defendant faces a maximum term of imprisonment of two years for the violations of supervised release.

On June 1, 2023, the defendant submitted a sentencing memorandum and accompanying exhibits and requested a below-Guidelines sentence of 120 months, the mandatory minimum.

---

would seek a superseding indictment to add a receipt charge, consistent with the evidence. The Government relayed the committee's decision to each of the defendant's appointed counsel.

### III.    Discussion

#### A.  Applicable Law

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)   to afford adequate deterrence to criminal conduct;
> (C)   to protect the public from further crimes of the defendant; and
> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

#### B.  A Guidelines Sentence Is Appropriate in This Case

In this case, the Government believes a sentence within Stipulated Guidelines Range of 130 to 162 months' imprisonment would achieve the goals of sentencing and appropriately balance the factors considered pursuant to Section 3553(a). In addition, for the reasons below, the Government believes that the term of imprisonment should be consecutive to any term of imprisonment imposed in the pending violation of supervised release proceeding before Judge Sullivan, and that a life term of supervised release is appropriate.

The offense to which the defendant pled guilty is serious. As the Second Circuit has noted,

> there can be no question that the dissemination of child pornography is a serious crime that causes real injury to particularly vulnerable victims. As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously

>   harmed—physically, emotionally, and mentally—in the process of producing such
>   pornography, but that harm is then exacerbated by the circulation, often for years
>   after the fact, of a graphic record of the child's exploitation and abuse.

*United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013); *see also New York v. Ferber*, 458 U.S. 747, 757-59 & nn. 9-10 (1982) (citing congressional and scholarly reports, and court cases). It is precisely because "[c]hild pornography harms and debases the most defenseless of our citizens" that "[b]oth the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," *Ferber*, 458 U.S. at 757, and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, *see Osborne v. Ohio*, 495 U.S. 103, 110 (1990).

The Supreme Court recognized in *Paroline* that a child pornography victim "suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Paroline v. United States*, 134 S.Ct. 1710, 1726 (2014) (also finding that harm to a child pornography victim is caused by "the trade in her images," and that a defendant who possessed such images "is a part of that cause, for he is one of those who viewed her images."). "Harms of this sort are a major reason why child pornography is outlawed," and "[t]he unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . plays a part in sustaining and aggravating this tragedy." *Id.*

The harm caused by the defendant here is substantial given the significant volume of child pornography that he possessed. The defendant's two devices contained over 1,000 images and 41 videos of child pornography. Each one of those images and videos depicts victims, and by downloading and watching those images and videos, the defendant continued the harm inflicted on each of those victims. Indeed, the harm inflicted on victims by the defendant's conduct is not theoretical. The Government attaches as Exhibits A, B, and C, victim impact statements from three identified victims who were among the victims in the child pornography material the defendant possessed on the Galaxy S8 Cellphone. Each of the victims poignantly describes how they continue to suffer and live in fear, not only from the original abuse, but also from the knowledge that the abusive sexual images of them as children remain circulating on the internet and that people like the defendant continue to view these images.

The defendant's conduct was serious because it also reflected a certain level of sophistication to avoid detection and a commitment to obtaining child pornography. The defendant accessed the child pornography images on the Galaxy S8 Cellphone using a hidden calculator application designed to hide the child pornography if anyone—such as a parole or probation officer—reviewed the contents of his cellphone. In addition, prior to reporting to parole in May 2018, during which meeting he was arrested, he wiped most of the contents of his cellphone, including the child pornography and his communications with the adult victim from the 2018 supervised release violation, using special software. The Government found the child pornography only because it conducted a forensic extraction of the cellphone pursuant to a search warrant after the defendant's arrest in 2018.

>   harmed—physically, emotionally, and mentally—in the process of producing such
>   pornography, but that harm is then exacerbated by the circulation, often for years
>   after the fact, of a graphic record of the child's exploitation and abuse.

*United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013); *see also New York v. Ferber*, 458 U.S. 747, 757-59 & nn. 9-10 (1982) (citing congressional and scholarly reports, and court cases). It is precisely because "[c]hild pornography harms and debases the most defenseless of our citizens" that "[b]oth the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," *Ferber*, 458 U.S. at 757, and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, *see Osborne v. Ohio*, 495 U.S. 103, 110 (1990).

The Supreme Court recognized in *Paroline* that a child pornography victim "suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Paroline v. United States*, 134 S.Ct. 1710, 1726 (2014) (also finding that harm to a child pornography victim is caused by "the trade in her images," and that a defendant who possessed such images "is a part of that cause, for he is one of those who viewed her images."). "Harms of this sort are a major reason why child pornography is outlawed," and "[t]he unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . plays a part in sustaining and aggravating this tragedy." *Id.*

The harm caused by the defendant here is substantial given the significant volume of child pornography that he possessed. The defendant's two devices contained over 1,000 images and 41 videos of child pornography. Each one of those images and videos depicts victims, and by downloading and watching those images and videos, the defendant continued the harm inflicted on each of those victims. Indeed, the harm inflicted on victims by the defendant's conduct is not theoretical. The Government attaches as Exhibits A, B, and C, victim impact statements from three identified victims who were among the victims in the child pornography material the defendant possessed on the Galaxy S8 Cellphone. Each of the victims poignantly describes how they continue to suffer and live in fear, not only from the original abuse, but also from the knowledge that the abusive sexual images of them as children remain circulating on the internet and that people like the defendant continue to view these images.

The defendant's conduct was serious because it also reflected a certain level of sophistication to avoid detection and a commitment to obtaining child pornography. The defendant accessed the child pornography images on the Galaxy S8 Cellphone using a hidden calculator application designed to hide the child pornography if anyone—such as a parole or probation officer—reviewed the contents of his cellphone. In addition, prior to reporting to parole in May 2018, during which meeting he was arrested, he wiped most of the contents of his cellphone, including the child pornography and his communications with the adult victim from the 2018 supervised release violation, using special software. The Government found the child pornography only because it conducted a forensic extraction of the cellphone pursuant to a search warrant after the defendant's arrest in 2018.

The fact that the defendant engaged in the conduct for an extended period and again and again downloaded child pornography reflects the defendant's resolve to obtain child pornography and merits a significant sentence.

A sentence within the Stipulated Guidelines Range is particularly warranted here given the need for specific deterrence and to protect the public from further crimes by the defendant. The defendant has demonstrated from his past conduct that he is a danger to the community and undeterred by prior, shorter sentences of imprisonment. Unlike many child pornography possession cases, the defendant has a prior sex offense conviction involving a twelve-year-old minor. The defendant seeks to minimize the conduct, describing it as "a sexual encounter with a girl too young to consent." (Def. Mem. at 7). Given the defendant was twenty-four years old at the time and the victim was only twelve years old, the offense was egregious and not at all akin to situations where a seventeen or sixteen-year-old and eighteen-year-old "voluntarily" engage in sexual activity, but which might otherwise not be legal, depending on a state's laws regarding the age of consent.[6] In addition, the defendant has on two separate occasions—in 2017 to 2018 and again in 2020—possessed child pornography, while on court supervision and despite previously serving multiple sentences of imprisonment for other conduct. Moreover, the defendant has demonstrated that he does not abide by court supervision. He has repeatedly absconded from court supervision and violated the terms of supervision, including by committing other crimes. He has consistently sought to circumvent any court monitoring put in place to ensure that he commits no further sex-related crimes. All of these factors together signal that a sentence within the Stipulated Guidelines Range is necessary. Although the defendant argues that the Guidelines in child pornography cases are "eccentric" and should be given little weight, and courts in this district do often sentence defendants in child pornography possession cases to below-Guidelines sentences, this case, as described here, has several aggravating and distinguishing factors that warrant a sentence within the Guidelines. The Government recognizes that the Court should consider the circumstances of the defendant's own childhood and the abuse he endured pursuant to Section 3553(a), but the aggravating factors in this case weigh in favor of a Guidelines sentence. In short, the defendant has demonstrated that he poses a substantial danger to the community, and a sentence with the Stipulated Guidelines Range is necessary to ensure the safety of the community and to deter the defendant from further crimes.

### C. Restitution

The Government requests that the Court order restitution consistent with the proposed restitution order, attached as Exhibit D. The Government received restitution requests from three identified victims, which are included as Exhibits E, F, and G and are submitted under seal. Given

---

[6] The PSR, which reflects the facts in the Kings County criminal complaint that was produced to defense in discovery, describes how the defendant forced himself sexually on the victim. (PSR ¶ 57). The defendant disputes those facts now for the first time in his sentencing submission. The Court need not make a finding regarding those specific disputed facts to determine sentencing here because the fact that the defendant engaged in sexual acts with a twelve-year-old girl when he was twenty-four years old is sufficiently appalling conduct to demonstrate that he is a danger to the community.

the defendant's lack of financial resources, the Government seeks the minimum mandatory restitution amount, which is $3,000 per victim. The Government has conferred with victim's counsel, who consent to the proposed restitution. The Government defers to the Court's discretion regarding a payment schedule given the defendant's lack of financial resources, but the Government opposes the defendant's recommendation to begin restitution payments five years after his release from prison as it would unduly delay restitution to the victims. The Court can set a reasonable payment schedule that would require the defendant to begin restitution payments upon release from prison, such as requiring the defendant to pay 10% of his income per month.

## IV.   Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence within the Stipulated Guidelines Range would be fair and appropriate in this case.

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney

By: _____
        Cecilia Vogel
        Assistant United States Attorney
        (212) 637-1084

cc:  Zachary Margulis-Ohnuma, Esq. (by ECF)